**O**

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔠𝔬𝔲𝔯𝔱
# 𝔠𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔠𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞

| | |
|---|---|
| LA GEM and JEWELRY DESIGN, INC.,<br>Plaintiff,<br><br>v.<br><br>GROUPON, INC.; GROUPON GOODS,<br>INC., et al.<br>Defendants. | Case No. 2:19-cv-00035-ODW (PLAx)<br><br>**ORDER GRANTING IN PART<br>DENYING IN PART MOTION FOR<br>SUMMARY JUDGMENT [120]** |

## I.     INTRODUCTION

Plaintiff LA Gem and Jewelry Design, Inc. ("LA Gem") filed a copyright infringement suit against Groupon, Inc., Groupon Goods, Inc. (collectively, "Groupon") and several jewelry businesses.  Pending before the Court is LA Gem's Motion for Summary Judgment.  (Mot. for Summ. J. ("Mot."), ECF No. 120.)[1]  For the following reasons, the Court **GRANTS in part DENIES in part** LA Gem's Motion.

---

[1] After considering the papers filed in connection with these motions, the Court deemed this matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II.     BACKGROUND

On January 3, 2019, LA Gem filed its initial Complaint against Defendants alleging direct, contributory, and vicarious copyright infringement against all Defendants.  (Compl. ¶¶ 70–82, ECF No. 1.)  Since then, LA Gem has settled its claims with all Defendants except Golden Moon Inc. ("Golden Moon"), David Khafif, and Groupon.  (*See* Order of Partial Dismissal, ECF No. 46; Order Granting Dismissal, ECF No. 115; Order Granting Dismissal, ECF No. 116.)

LA Gem is a jewelry company in Los Angeles, California, that employs designers and sells unique jewelry pieces in retail and e-commerce stores like Macy's, J.C. Penney, and Amazon.  (Pl.'s Statement of Undisputed Facts ("PSUF")[2] ¶¶ 1–2, ECF No. 120-1.)   LA Gem asserts that Golden Moon, Khafif, and Groupon (collectively, "Defendants") infringed two of its copyrighted designs.  (First Am. Compl. ("FAC") ¶¶ 35–53, ECF No. 36; PSUF ¶¶ 3–5.)  LA Gem owns U.S. Copyright Registration Nos. VA 1-889-369 (the "Mom Design") and VA 1-916-408 (the "Crescent Design") (together, "Copyrighted Designs").  (PSUF ¶¶ 10, 12; Decl. of Paul Heimstadt Ex. 3 ("Copyright Registration of Mom Design"), ECF No. 122-1; Decl. of Paul Heimstadt Ex. 1 ("Copyright Registration of Crescent Design"), ECF No. 122-1.)  The two Copyrighted Designs have been distributed worldwide since

---

[2] Defendants dispute statements LA Gem proffers as undisputed.  (*See* DSUF.)  However, in several instances, Defendants fail to cite evidence or alternatively, cite to entire deposition transcripts to assert a dispute.  (*See e.g.* DSUF 1–2, 22–25.)  "[J]udges are not like pigs, hunting for truffles buried in briefs."  *Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159, 1162 n.1 (C.D. Cal. 2013).  Parties bear the obligation to lay out their support clearly.  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).  "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found."  *Id.*  If the non-moving party fails to identify the triable issues of fact, the court may treat the moving party's evidence as uncontroverted, so long as the facts are "adequately supported" by the moving party.  Local Rule 56-3; *see also International Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 398 n.14 (1986) ("[I]t is not [the Court's] task sua sponte to search the record for evidence to support the [parties'] claim[s].").  Nonetheless, the Court attempted to discern Defendants' point of contention yet found no material dispute in most instances.

1    2013.  (PSUF ¶¶ 9, 11.)  The Copyrighted Designs and the infringing jewelry pieces

2    are attached as Exhibit C to the Declaration of Jonathan Ross.



(Decl. of Jonathan Ross Ex. C, ECF No. 130-2.)

Defendants contend that the phrase "I love you to the moon and back" first appeared in a children's book and thus, is not an original phrase created by LA Gem. (Defs.' Statement of Undisputed Facts ("DSUF") ¶ 74.)  Defendants also indicate that the combination of a crescent moon and a circle and a crescent moon with the phrase "to the moon and back" is present in other jewelry designs.  (DSUF ¶¶ 75–76.)  This pre-existing use was not identified in LA Gem's copyright registrations.  (DSUF ¶ 77.)

Golden Moon sells jewelry but does not manufacture or design it.  (PSUF ¶¶ 20, 21.)  Instead, Golden Moon frequents trade shows to select designs it wishes to copy.  (PSUF ¶ 22; Decl. of Jonathan J. Ross Ex. G ("Khafif Dep.") 35:7–12.)

Specifically, an employee of Golden Moon walks through the trade shows with employees of its Chinese manufacturer and points out designs at booths to order similar pieces. (PSUF ¶¶ 22, 29; Khafif Dep. 68:18–69:3.) Relevant here, Golden Moon attended the JCK trade show in Las Vegas between 2013 and 2019, where LA Gem had a booth during those years and displayed the Crescent Design and Mom Design every year since 2015. (PSUF ¶ 30.)

LA Gem claims that Khafif—President, shareholder, and primary bookkeeper of Golden Moon—approved orders of jewelry infringing the Copyrighted Designs in 2016. (PSUF ¶¶ 18, 24–25.) Golden Moon sold pendants copying the Crescent Design and earrings copying the Mom Design only through Groupon. (PSUF ¶¶ 33, 36.) Groupon approved the two products for sale and issued purchase orders. (PSUF ¶ 37.) Prior to selling the products, neither Golden Moon nor Khafif ordered a copyright search or conducted a due diligence investigation to that end. (PSUF ¶¶ 41, 42.)

Groupon Inc. is an e-commerce retailer and Groupon Goods Inc. is a subsidiary of Groupon Inc. that negotiates with and advises vendors on product prices and sales timeline. (PSUF ¶¶ 43, 46.) Both share a website, employees, officers, and offices. (PSUF ¶ 44.) Vendors may partner with Groupon to sell their products on its platform provided that the vendor satisfies Groupon's vetting process. (PSUF ¶¶ 48, 49.) For instance, a potential vendor may be designated as a "first-party vendor" after contacting Groupon with a proposed product and meeting with Groupon to determine product fit. (PSUF ¶ 63.) Here, Groupon's representative, Jason Stutzman, visited Golden Moon's office in New York ten to fifteen times and interacted with Golden Moon at Groupon's Chicago office. (PSUF ¶ 50.) Stutzman was aware that Golden Moon acquired jewelry from international supply channels and did not manufacture the products. (PSUF ¶ 51.) Golden Moon was approved as a first-party vendor. (PSUF ¶ 63.)

As required by the Groupon Goods Vendor Guide, Golden Moon represented that it had the rights to sell the infringing products. (PSUF ¶ 62.) However, LA Gem never authorized Golden Moon, Khafif, or Groupon to copy, reproduce, manufacture, duplicate, disseminate, or distribute the Copyrighted Designs. (PSUF ¶ 8.) In total, Groupon sold 38,963 jewelry pieces infringing the Crescent Design and 664 jewelry pieces infringing the Mom Design, all supplied by Khafif and Golden Moon. (PSUF ¶¶ 13–14, 16–17, 72–73.) Groupon accepted payment from consumers and retained a portion of the revenue. (PSUF ¶¶ 67, 72.) Groupon also determined the retail sales price and sold the infringing products on groupon.com and livingsocial.com. (PSUF ¶¶ 52–58.)

## III.     PRELIMINARY PROCEDURAL ISSUES

### A.     Evidentiary Objections

Defendants object to LA Gem's evidence. (Defs.' Evid. Obj., ECF No. 129-2.) First, Defendants assert that LA Gem's declarations of Joe Behney and Paul Heimstadt should not be considered as LA Gem failed to send anyone to its noticed deposition under Rule 30(b)(6). (Defs.' Evid. Obj. 2.) "The court where the action is pending **may**, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition;" Fed. R. Civ. P. 37(d) (emphasis added). Here, the Court extended the deadline for discovery several times from the original deadline of February 28, 2020 to May 20, 2020. (Scheduling and Case Management Order 24, ECF No. 63; Order, ECF No. 109.) On March 16, 2020, Defendants contacted LA Gem to reschedule the deposition which was, at that time, noticed for March 19, 2020, due to concerns related to the ongoing pandemic. (Ex Parte Appl. 3, ECF No. 117.) Defendants explained that it failed to reschedule the deposition because of the continuing circumstances and sought to extend the May 20, 2020 deadline to June 22, 2020. (Ex Parte Appl. 4.) LA Gem opposed the extension and indicated that Defendants had noticed a deposition for May

22, 2020, which LA Gem had agreed to despite the discovery deadline. (Opp'n to Ex Parte 2, ECF No. 118.)   Thus, the Court denied the ex parte application for an extension, finding that Defendants had created their crisis.  (Order, ECF No. 119.)

The Court ordered that "[a]ll depositions shall be scheduled to commence sufficiently in advance of the discovery cut-off date to permit their completion and to permit the deposing party enough time to bring any discovery motions concerning the deposition prior to the cutoff date."  (Scheduling and Case Management Order 3.) Defendants knew well before the original deadline in February that it wished to depose LA Gem.  Yet, they failed to notice a deposition within the discovery period. Additionally, a court order based on a showing of "good cause" is required to depose a witness after the discovery cut-off ordered by the court; parties' stipulation is not sufficient.  Fed. R. Civ. P. 29(b).  Thus, the deposition was not properly noticed, and LA Gem was under no obligation to attend.  Accordingly, the Court will not sanction LA Gem for Defendants' delay and the Court **OVERRULES** the objection. Nevertheless, the Court notes that it has not relied on any specific statements made in either declaration to which Defendants object.

Defendants also object to several separate statement paragraphs on relevance grounds.   As the Court does not consider the facts Defendants contest in the disposition of this Motion, the Court **OVERRULES** Defendants' objections.

**B.    Rule 56(d) Extension**

Defendants seek an order denying the Motion without prejudice under Rule 56(d) and compelling LA Gem to appear for its deposition.  (Opp'n to Mot. 6, ECF No. 129.)  Rule 56(d) permits a continuance where the requesting party provides a declaration adequately explaining that "additional discovery would reveal specific facts precluding summary judgment." *Tatum v. City of San Francisco*, 441 F.3d 1090, 1101 (9th Cir. 2006).  Defendants fail to meet this burden.  Additionally, as previously discussed, the Court extended the discovery cut-off for several months, yet Defendants noticed LA Gem's deposition beyond the May 20, 2020 deadline.  Thus,

the Court **DENIES** Defendants' request to deny the instant Motion pursuant to Rule 56(d).

## IV.    LEGAL STANDARD

A Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1.  A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2.  "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## V.   DISCUSSION

LA Gem seeks judgment on the validity of its copyrights, Defendants' willful infringement, and Defendants' affirmative defenses and counterclaims.   (Mot. ii.) Defendants oppose and argue that the copyright registrations are invalid as the designs are not original, the products are not substantially similar, their conduct was not willful, and the Digital Millennium Copyright Act shields Groupon from liability. (*See* Opp'n to Mot. ("Opp'n"), ECF No. 129.)  The Court addresses LA Gem's motion and discusses Defendants' pertinent arguments therein.

**A.   LA Gem's Infringement Claim**

LA Gem moves for summary judgment on its claim of copyright infringement. (*See* Mot.)  To establish a valid copyright infringement claim, LA Gem must prove: (1) that it owns a valid copyright in the protected materials; and (2) that Defendants copied protected aspects of the work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).  Defendants challenge both elements. (Opp'n 6–11.)

*1.   Copyright Validity*

LA Gem argues that its copyright registrations are valid, while Defendants counter that they are not. (Mot. 7; Opp'n 11–12.)  "A copyright registration is prima

facie evidence of the validity of the copyright and the facts stated in the certificate." *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (internal quotation marks omitted).    This presumption can be rebutted, but "[a] registration error does not bar an infringement action unless 'the inaccurate information was included on the application [ ...] **with knowledge that it was inaccurate'** and the inaccuracy, 'if known, would have caused the Register of Copyrights to refuse registration.'" *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) (emphasis added) (citing 17 U.S.C. § 411(b)(1)).

Defendants assert that LA Gem knowingly failed to identify pre-existing materials used in its work on its registration certificates.  (Opp'n 11–12.)  Specifically, Defendants contend that LA Gem failed to identify the pre-existing phrase "I Love You to the Moon and Back" and the combination of a crescent moon and circle. (Opp'n 11.)    Defendants provide as evidence pre-existing materials—images of a book published in 1994 in which the phrase "I love you right up to the moon and back" exists, and photos of jewelry designs predating LA Gem's with certain elements in common.    (DSUF ¶¶ 74–76.)    Although the Copyright Registrations do not reference the pre-existing materials, critically, Defendants fail to provide any evidence that LA Gem was aware of these materials.  (DSUF ¶ 77; *See* Decl. of Jonathan J. Ross ¶¶ 3–5, ECF No. 130; Reply 5, 8.) In an attempt to prove that pre-existing materials exist, counsel for Golden Moon and Khafif declares that his "firm maintains a library of books and catalogs containing images of jewelry pieces from ancient times to the present" which contain pieces with elements similar to those of LA Gem's designs; however, he provides no context as to how LA Gem would have access to these materials.  (Decl. of Stephen E. Feldman ¶¶ 2–4, ECF No. 129-3.)    Thus, Defendants have failed to refute the presumption of validity based on the copyright registrations. *Unicolors, Inc.*, 853 F.3d at 991.

Defendants also assert that LA Gem's copyrights are invalid because the Crescent Design and Mom Design are not original and, therefore, are not

copyrightable.  (Opp'n 7–9.)  "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . ."  17 U.S.C. § 102.

> To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity. To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, "no matter how crude, humble or obvious" it might be.  Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying.

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) (internal citations omitted).  Works may compile pre-existing elements in an original design, and where "the selection and arrangement are original, these elements of the work are eligible for copyright protection."  *Id*. at 349.

Here, LA Gem provides a declaration stating that LA Gem employs artistic designers to create original and unique jewelry pieces including the Crescent Design and the Mom Design.  (PSUF ¶¶ 1, 3–5.)  Furthermore, Defendants do not rebut the authorship prong of originality.  (*See* Opp'n.)  Thus, LA Gem establishes that "the work was independently created by the author."  *Feist*, 499 U.S. at 245.

Defendants argue that the designs merely combine common and trite elements lacking distinguishable variations from prior works.  (Opp'n 8.)  They urge the Court to look to *Satava v. Lowry*, in which the Ninth Circuit concluded that copyright protection over realistic sculptures of jellyfish in glass was "thin" because the plaintiff could not prevent others from copying "elements of expression that nature displays for all observers," such as the jellyfish physiology or glass-in-glass medium.  323 F.3d 805, 811–12 (9th Cir. 2003).  However, the *Satava* court held that a combination of unprotectable elements may qualify for copyright protection "if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."  *Id*. at 811.

Here, the Crescent Design and the Mom Design each present a common phrase in a unique font, with particularly arranged, darkened text on common symbols—a round sun and a crescent moon—in a distinct manner. (Mot. 11, 12.) Thus, the more than "slight" amount of creativity in the designs suffices, and the Court finds them original. *Feist*, 499 U.S. at 245; *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 851 (9th Cir. 2012) (distinguishing *Satava* and finding floral designs on fabric sufficiently original); *see also Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*, 528 F. Supp. 2d 1106, 1112 (W.D. Wash. 2007) (granting plaintiff's summary judgment on this issue), *aff'd*, 373 F. App'x 752 (9th Cir. 2010). Accordingly, the Court **GRANTS** LA Gem's motion on this element and Defendants' counterclaim seeking a declaration of invalidity.

### 2.   *Copyright Infringement*

The Court next addresses the second prong of the infringement analysis, which contains two separate components: "copying" and "unlawful appropriation." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 1375, 203 L. Ed. 2d 609 (2019), *overruled on other grounds by Skidmore*, 952 F.3d 1051.

### a.  Copying

Copying can be proved "circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Id*. at 1117. To demonstrate access, "plaintiff must show that the defendant had a 'reasonable possibility' to view the plaintiff's work." *Unicolors, Inc. v. Wet Seal, Inc.*, No. SACV 12-1065-DOC JCX, 2013 WL 1953727, at *4 (C.D. Cal. May 9, 2013). "Circumstantial evidence of reasonable access is proven in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work . . . , or (2) the plaintiff's work has been widely disseminated." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). "To prove copying, the similarities between the two works need not be extensive [or]

involve protected elements of the plaintiff's work. They just need to be similarities one would not expect to arise if the two works had been created independently." *Skidmore*, 952 F.3d at 1051.

LA Gem proffers undisputed circumstantial evidence that Golden Moon and Khafif had access to its copyrighted designs, and that the products sold on Groupon's website are similar to its work. (Mot. 8–13.)  Golden Moon sells jewelry but does not manufacture it or employ jewelry designers to design it.  (PSUF ¶¶ 20, 21.)  Instead, Golden Moon frequents trade shows with its foreign manufacturing partner where it discovers and identifies designs to reproduce and sell.  (PSUF ¶ 22, 29; Khafif Dep. 35:7–12; 68:18–69:3.)  Specifically, Golden Moon attended the JCK trade show in Las Vegas between 2013 and 2019, and LA Gem had a booth at JCK during those years where it displayed the Crescent Design and Mom Design every year since 2015. (PSUF ¶ 30.)  LA Gem lays out a clear chain of events between its works and Defendants' access to that work.  Thus, there is no dispute of fact that Defendants had a reasonable possibility to access the Copyrighted Designs.

LA Gem also establishes that the infringing works are similar to the Copyrighted Designs.  Specifically, LA Gem asserts that the two have the same text, text placement, font, design shape, and other similar characteristics.  (PSUF ¶¶ 13, 16; Mot. 11, 12.)  Defendants do not dispute these facts, but argue that the works are dissimilar nevertheless.  (DSUF ¶¶ 20–22, 29; Opp'n 9–11.)  Defendants conflate the similarity requirements of copying and unlawful appropriation.  (*See* Opp'n 9–11.)  As "the similarities between the two works need not be extensive [or] involve protected elements of the plaintiff's work" to prove copying in fact, the Court finds that the works are sufficiently similar to establish this prong.  *Rentmeester*, 883 F.3d at 1116. Thus, the Court **GRANTS** LA Gem's Motion for Summary Judgment on the issue of copying.

b.  Unlawful Appropriation

"[T]o prove unlawful appropriation, on the other hand, the similarities between the two works must be 'substantial' and they must involve protected elements of the plaintiff's work." *Skidmore*, 952 F.3d at 1051.  The Ninth Circuit uses a two-part test to determine substantial similarity: (1) the extrinsic test, and (2) the intrinsic test. *Id.* at 1064.  "[T]he extrinsic test, compares the objective similarities of specific expressive elements in the two works." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  For the extrinsic test, only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability; thus, "it is essential to distinguish between the protected and unprotected material in a plaintiff's work." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004). The intrinsic test, "test[s] for similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008).  The intrinsic test requires that the work's elements be viewed "as a whole." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994).  Because "the intrinsic test is inherently subjective," it is "often inappropriate for summary judgment." *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp. 2d 1211, 1228 (C.D. Cal. 2006); *see Baxter v. MCA, Inc.*, 812 F.2d 421, 424 (9th Cir. 1987) ("The test to be applied has been labeled an "intrinsic" one by this Court in that it depends not upon external criteria, but instead upon the response of the ordinary reasonable person to the works."); *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983) ("A grant of summary judgment for plaintiff is proper where works are so overwhelmingly identical that the possibility of independent creation is precluded.")

Here, LA Gem moves for summary judgment on the issues that the Golden Moon necklace is substantially similar to its Crescent Design and Golden Moon's earrings are substantially similar to its Mom Design.  (Mot. 10–14.)  LA Gem asserts that the necklace copied the placement of the "I / love you/ to the / moon and / back"

text, mimicked the position on the crescent disc as well as the cursive font with a heart after the "k" and similarly darkened the text. (Mot. 11.) Furthermore, the stones in both are similarly sized and placed in order of ascending and descending size. (Mot. 11.) As for the Mom Design, LA Gem again argues that Golden Moon's Mom earrings copy the Mom Design's font, including its placement and darkening. (Mot. 12.) The letters in LA Gem's design are randomly capitalized, yet, strikingly, the same letters are capitalized in Golden Moon's design. (Mot. 12.) In opposition, Defendants do not dispute these similarities but raise differences: LA Gem's Crescent Design are two free standing pendants, while its necklace is one connected piece with an additional crystal dangling on the bottom. (Opp'n 10.) As for the Mom Design, Defendants assert that their earrings do not use the word "Mom," nor do they contain a heart-shaped element. (Opp'n 11.) Additionally, Defendants contend that the thicknesses and depths of its products are different. (Opp'n 10.)

The combination of LA Gem's unique font, the placement of the font on the crescent, the combination of the shapes with the placement of the crystal, the darkening of the text and the choice of capitalization are all unique expressions protected in its work. *See Cosmos Jewelry Ltd. v. Po Sun Hon Co.*, 470 F. Supp. 2d 1072, 1083 (C.D. Cal. 2006), aff'd, No. 06-56338, 2009 WL 766517 (9th Cir. Mar. 24, 2009). The Court notes that there appear to be substantial similarities between the two works in the protectable elements. Thus, LA Gem adequately establishes the extrinsic test. However, as for the intrinsic test, the Court finds that a reasonable juror could conclude that Golden Moon's works "look and feel" different from LA Gem's work. *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1164 (9th Cir. 1977), *overruled on other grounds by Skidmore*, 952 F.3d 1051; *see Lucky Break Wishbone*, 528 F. Supp. 2d at 1124–25 ("There are genuine issues of material fact as to whether the Sears Wishbone and the wishbone image in the Sears Circular are virtually identical to the Lucky Break prototype wishbone."); *Fantasy, Inc. v. Fogerty*, 664 F. Supp. 1345, 1350 (N.D. Cal. 1987),

aff'd, 984 F.2d 1524 (9th Cir. 1993), rev'd, 510 U.S. 517 (1994) ("After reviewing the papers and exhibits submitted by the parties, the court finds that reasonable minds could differ as to the absence or existence of substantial similarity between Jungle and Old Man."); *but see L.A. Printex Indus., Inc. v. Lia Lee, Inc.*, No. CV 08-1836 ODW (PJWX), 2009 WL 789877, at *5 (C.D. Cal. Mar. 23, 2009) (finding defendant's designs "strikingly similar" to plaintiff's design where the only difference was the language of text printed on the fabric). Accordingly, the Court **DENIES** LA Gem's motion on the issue of unlawful appropriation.

LA Gem also moves for summary judgment on issues of secondary infringement. (Mot. 17–21.) As the Court has not determined that direct infringement occurred, the Court does not reach the issue. Accordingly, the Court **DENIES** LA Gem's motion on the issues of indirect infringement.

**B.   Willfulness of Infringement**

Next, the Court addresses LA Gem's motion for summary judgment on the issue that Defendants willfully infringed on its designs. (Mot. 14–17.) "[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolors, Inc.*, 853 F.3d at 991. Typically, the question of willfulness is submitted to the Jury. *See Unicolors, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017); *In re Barboza*, 545 F.3d 702, 708 (9th Cir. 2008). However, courts may find willfulness on summary judgment where evidence demonstrates that infringement continued despite notice of the rights. *See Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). LA Gem presents evidence demonstrating that Defendants may be aware of its products sold at tradeshows and online platforms. (Reply in Supp. of Mot. 18, ECF No. 155.) However, LA Gem does not prove that Defendants had notice of its rights. Indeed, Defendants assert that because LA Gem's works combined common elements, they had no reason to believe LA Gem's products were

protectable and that its products were infringing.  (Opp'n 14.)  Thus, the Court finds that there is a material dispute of fact as to Defendants' awareness of LA Gem's copyrights.  Additionally, as the Court has not determined that direct infringement occurred, the Court cannot determine the issue of willfulness.  Accordingly, the Court **DENIES** the motion on the issue of willful infringement.

## C.     Defendants' Affirmative Defenses

LA Gem also seeks judgment on Defendants' affirmative defenses: laches, unclean hands, misuse of copyright, independent creation and innocent intent. (Mot. 22–24.)  Defendants do not oppose the motion on these grounds.  (*See* Opp'n.) LA Gem asserts that Defendants fail to raise any evidence creating a triable issue on these defenses.  The Court agrees.

First, for the defense of laches, "the Supreme Court held that laches could not bar a copyright infringement claim brought within the Copyright Act's three-year statute of limitations."  *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1018 (9th Cir. 2018) (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677 (2014)).  No evidence is presented to establish that this suit was brought outside of the three-year statute of limitations.  Accordingly, the Court **GRANTS** LA Gem's Motion as to the defense of laches.

Next, "[t]he defense of unclean hands by virtue of copyright misuse prevents the copyright owner from asserting infringement and asking for damages when the infringement occurred by his dereliction of duty."  *Supermarket of Homes, Inc. v. San Fernando Valley Bd. of Realtors*, 786 F.2d 1400, 1408 (9th Cir. 1986).  No evidence of LA Gem's dereliction of duty exists before the Court.  Thus, the Court **GRANTS** LA Gem's Motion on this affirmative defense.

For independent creation, "[o]nce a plaintiff has demonstrated that a defendant had access to the copyrighted work and that the defendant's work is substantially similar to the copyrighted work, the burden shifts to the defendant to prove that the defendant's work was not a copy, but was independently created."  *Transgo, Inc. v.*

*Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1018 (9th Cir. 1985).   Here, as previously discussed, Defendants had access to LA Gem's designs yet do not argue, let alone proffer evidence, to support that they independently created their designs. *See infra* IV.A.2.a.   Accordingly, the Court **GRANTS** LA Gem's Motion on this defense.

As for innocent intent, Defendants must prove that they "w[ere] not aware and had no reason to believe that [their] acts constituted an infringement of copyright."  17 U.S.C. § 504(c)(2).  The Court **DENIES** LA Gem's motion for summary judgment on the "innocent infringer" defense for the same reasons it denies the motion with respect to willfulness.   LA Gem presents no evidence suggesting that Defendants were actually aware that their acts constituted infringement.   Although Defendants failed to investigate possible copyright protections, a factfinder could conclude that Defendants had reason to believe that taking inspiration from designs at a tradeshow may not have infringed on someone's rights.

Finally, in its Reply, LA Gem seeks summary judgment on the issue of release as a defense.  (Reply 19.)  Although the Court concurs that no evidence demonstrates that LA Gem released its claim, the Court **DENIES** summary judgment on this issue as LA Gem failed to raise it in its Motion, thereby denying Defendants an opportunity to oppose.  (*See* Mot.; *Autotel v. Nevada Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are waived."); *Goos v. Shell Oil Co.*, 451 F. App'x 700, 701 (9th Cir. 2011) (stating that issues not raised until the Reply brief are waived).)

**D.    Digital Millennium Copyright Act**

Finally, LA Gem moves for summary judgment on the issue of whether the Digital Millennium Copyright Act ("DMCA") protects Groupon.   DMCA provides safe harbors in certain conditions for qualified online service providers from claims of copyright infringement made against them as a result of the conduct of their users.  17 U.S.C. § 512.  "The definition of 'service provider' for the purposes of the § 512(a)

safe harbor limitation of liability is 'an entity offering the transmission, routing, or providing of connections for digital online communications, between or among points specified by a user, of material of the user's choosing, without modification to the content of the material as sent or received.'"  *Ellison v. Robertson*, 357 F.3d 1072, 1081 (9th Cir. 2004) (quoting 17 U.S.C. § 512(k)(1)(A)).   To qualify for the safe harbor, the service provider:

> (1)(A) [can] not have actual knowledge that the material or activity is infringing;
> (B) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
> (C) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
> (2) [can] not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity[.]

17 U.S.C.A. § 512(d).

First, LA Gem provides evidence that Groupon was aware of the facts and circumstances from which infringing activity is apparent.   Groupon advises vendors on product prices and sale, and vendors partner with Groupon to sell their products on its platform.   Additionally, vendors must satisfy Groupon's vetting process.  (PSUF ¶¶ 43, 46, 48–49; Mot. 21–22.)   To be designated as a first-party vendor, Golden Moon interacted with a Groupon representative over a dozen times in its New York office as well as Groupon's Chicago office.  (PSUF ¶¶ 50, 63.)   The representative was aware that Golden Moon acquired jewelry from international supply channels and did not manufacture the products.  (PSUF ¶ 51.)   Thus, at best, the evidence shows that Groupon may have been aware of the infringing activity, which is insufficient.

Notably, LA Gem provides evidence that Groupon received a financial benefit directly attributable to the infringing activity.  (Mot. 21–22.)   Groupon accepted payment from consumers and retained a portion of the revenue of 38,963 units of infringing jewelry similar to the Crescent Design and 664 units of infringing jewelry

similar to the Mom Design.  (PSUF ¶¶ 13–14, 16–17, 62–73.)  LA Gem also provides evidence of the control Groupon had in selling these products: from sourcing the goods, to purchasing and then reselling them.  (PSUF ¶¶ 50, 63, 67.)  Defendants do not dispute these facts.  As Groupon selected and profited from Golden Moon's products, the Court finds that Groupon does not qualify for the safe harbor.  Accordingly, the Court **GRANTS** LA Gem's Motion on this issue.

## VI.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** LA Gem's Motion for Summary Judgment as to the validity of LA Gem's copyrights and the element of copying and **DENIES** the Motion as to the element of unlawful appropriation and the issues of secondary infringement and willfulness.  Additionally, the Court **GRANTS** LA Gem's Motion as to Defendants' affirmative defenses of laches, unclean hands/ copyright misuse, and independent creation but **DENIES** the Motion as to innocent defense and release.  Finally, the Court **GRANTS** LA Gem's Motion as to Groupon's DMCA defense.  (ECF No. 120.)

**IT IS SO ORDERED.**

September 10, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**